IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENCORE MEDICAL, L.P.,            )
    Plaintiff/Counterclaim      )
    Defendant,                  )      **CIVIL ACTION NO. 3:12-58**
                        )
      v.                          )      **JUDGE KIM R. GIBSON**
                        )
JAY KENNEDY, D.C.,               )
    Defendant/Counterclaimant,  )
                        )
      v.                          )
                        )
GEOFFREY MISCOE; MIR-COM         )
PRODUCTS, LLC; BRYANNE           )
ENTERPRISES, INC.; and MIG       )
RUNNER, LLC, *a/k/a "MRP,"*      )
                        )
    Defendants.                 )

## MEMORANDUM AND ORDER OF COURT

### I.    INTRODUCTION

Presently before the Court is Defendants' motion to exclude the expert testimony of

Dr. Christopher M. Proulx for failure to conform to the requirements of Federal Rule of

Evidence 702 (ECF No. 128). The parties submitted extensive briefing on the issue (ECF

Nos. 129, 138, 144, 145), and the Court subsequently held a *Daubert*/Rule 702 hearing.[1]

For the reasons that follow, the Court will grant Defendants' motion (ECF No. 128).

### II.    BACKGROUND

This case stems from a contract between Plaintiff Encore Medical L.P. and

Defendant Jay Kennedy, wherein Kennedy agreed to sell to Encore "certain intellectual

property related to chiropractic decompression tables and accessories in exchange for a

---

[1] The transcript from the *Daubert*/Rule 702 hearing will be cited as Hr'g Tr. [page:line].

lump sum payment and royalties." (ECF No. 143 at 1). The agreement contained a non-compete clause that prohibited Kennedy from developing, distributing, or selling any "competitive products." (*Id.* at 2). Encore alleges that Kennedy conspired with co-defendants Geoffrey Miscoe; Mir-Com Products, LLC; Bryanne Enterprises, Inc.; and MIG Runner, LLC (collectively, "Defendants") to design competing decompression tables and accessories, in violation of the non-compete clause. The rival tables at issue are the "Kennedy Decompression Table" and the "Kennedy Neural-Flex System." *Id.*

On October 9, 2013, Defendants filed a motion for sanctions or, in the alternative, a motion to exclude the proposed expert testimony of Dr. Christopher Proulx. (ECF No. 128). On November 8, 2013, the Court denied Defendants' request for sanctions and instructed Encore to provide a written expert report for Dr. Proulx. (ECF No. 141). Defendants argue that Dr. Proulx's proffered testimony fails to satisfy the requirements of Rule 702. The parties submitted supplemental briefs on the issue, and a *Daubert*/Rule 702 hearing was held on December 10, 2013. The matter is now ripe for disposition.

## III.   LEGAL STANDARD

Under Rule 702, an expert witness may be permitted to testify regarding "scientific, technical, or other specialized knowledge" if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. For expert testimony to be admissible, three additional requirements must be satisfied: (1) the testimony must be "based upon sufficient facts or data"; (2) the testimony must be "the product of reliable principles and methods"; and (3) the expert witness must have "reliably applied the principles and methods to the facts of the case." *Id.* The Court is thus obligated to consider a "trilogy of restrictions" before admitting expert testimony: *qualification,*

2

*reliability*, and *fit*. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d

Cir. 2003). The Third Circuit has elaborated as follows:

> Qualification refers to the requirement that the witness
> possess specialized expertise. . . . Secondly, the testimony
> must be reliable; it must be based on the methods and
> procedures of science rather than on subjective belief or
> unsupported speculation; the expert must have good grounds
> for his on her belief. . . . Finally, Rule 702 requires that the
> expert testimony must fit the issues in the case. In other
> words, the expert's testimony must be relevant . . .

*Id.* (internal citations and quotations omitted).

The party offering the expert testimony must prove the Rule 702 requirements by a

preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). The

trial judge serves as a "gatekeeper" in determining the admissibility of proposed expert

testimony. *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).

## IV. DISCUSSION

Dr. Proulx is a licensed chiropractor with more than a decade of experience in the

chiropractic profession, having served as a private practitioner, academician, and clinical

consultant. (ECF No. 144-2). He is now a salaried employee of DJO, LLC, a parent

company of Encore. (*Id.*). Dr. Proulx has proffered eight opinions in this matter, as

detailed in his expert report:

1) A practicing chiropractor would understand the word "machine" in the
   context of decompression equipment to refer to an entire decompression
   system composed of a decompression table, a traction motor, and various
   other components including, but not limited to, a belting system, traction
   blocks, and pull patterns. The word "product" would be understood as
   synonymous with or describing "a belting system" . . .

2) As an independent contractor with Encore, Dr. Kennedy had access to
   highly confidential and proprietary information . . .

3) Dr. Kennedy's affiliation with Encore gave Dr. Kennedy a reputation he would not otherwise have had.

4) A chiropractor is more likely to achieve better clinical outcomes by using a decompression system purchased from a single manufacture as opposed to using a system put together by buying the various components . . . from different manufacturers.

5) When evaluating decompression systems for purchase, practicing chiropractors are heavily influenced by whether or not another practicing chiropractor is associated with the manufacturer of the system and whether the manufacturer provides clinical training.

6) By teaching Kennedy Technique Seminars . . . Dr. Kennedy explicitly and implicitly endorses the Kennedy Decompression System.

7) [Based on discussions with other practitioners,] Dr. Kennedy is teaching techniques that can reportedly be performed only on a Kennedy table.

8) The Kennedy Technique Seminars are marketed to and regarded by practicing chiropractors as necessary in order to avoid legal liability in the event of a negligence/malpractice claim.

(ECF No. 145-1 at 3-6).

Defendants argue that these opinions "qualify as purely subjective beliefs and unsubstantiated speculation." (ECF No. 145 at 2). In response, Encore argues that Dr. Proulx's extensive practical experience justifies these opinions and that his methodology need not be based on experiments beyond common understanding. (ECF No. 144 at 5). The Court finds that Encore has failed to show by a preponderance of evidence that these opinions fit the requirements of Rule 702. The Court addresses each opinion in turn.

## A. The meaning of the words "machine" and "product" in the context of decompression equipment

For expert testimony to meet the "fit" requirement under Rule 702, it must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The issue is one of relevance. *Schneider ex rel. Estate of Schneider v. Fried*, 320

4

F.3d 396, 404 (3d Cir. 2003). Here, the June 25, 2002 product agreement defines the terms "Machine" and "Product." (ECF No. 1-1 at 36). "Machine" is "a particular traction machine of ENCORE," and "Product" is "a traction/decompression belting package for use in connection with traction machines." (*Id.*). Encore has not shown that the proffered testimony would assist the trier of fact, and the product agreement clearly defines the terms at issue. Therefore, the opinion does not satisfy the fit requirement.

## B. Kennedy's access to highly confidential and proprietary information

Dr. Proulx next opines that, as an independent contractor of Encore, Kennedy would have had access to information such as Encore's dealer network, research and engineering projects, and marketing strategies. (ECF No. 145-1 at 4). Dr. Proulx explains, "I formed this [opinion] based upon the type and extent of access I have had to Encore's confidential and proprietary information during my tenure at Encore in a position that is like the position Dr. Kennedy held with Encore." (*Id.*; *accord* Hr'g Tr. 77:14-17).

With respect to reliability under Rule 702, the expert's opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). In determining reliability, a court may consider the following list of non-exhaustive factors:

whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 n.8. In seeking admission of expert testimony, a party need not demonstrate "that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Id.* at 744 (emphasis in original).

Here, Encore fails to show that Dr. Proulx's opinion is reliable. Dr. Proulx even acknowledges that, using his personal experience as a contractor with Encore, he is simply speculating as to the type of information Encore provided to Kennedy. (*See* Hr'g Tr. 77:14-17, 78:23–79:1). Such a conclusion is not founded upon good grounds. In addition, whether Kennedy had access to proprietary information does not require expert testimony: a proper fact witness can describe the types of information Encore provided to Kennedy.

### C.     The enhanced reputation of Kennedy due to his affiliation with Encore

Dr. Proulx further opines that Kennedy's affiliation with Encore gave him a reputation "he otherwise would not have had." (ECF No. 145-1 at 4). According to Dr. Proulx, Kennedy was not considered an expert on decompression until his affiliation with Encore. (*Id.*). Dr. Proulx further justifies his conclusion on the fact that Encore gave Kennedy "a platform" for educational seminars. *Id.*

At the *Daubert*/Rule 702 hearing, Dr. Proulx failed to show how Encore enhanced Kennedy's notoriety. (*See generally* Hr'g Tr. 80–90). As well, in forming his conclusion,

Dr. Proulx "used little, if any, methodology beyond his own intuition." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Such methodology does satisfy the reliability requirement. "If *Daubert* and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000).

The most problematic aspect of Dr. Proulx's conclusion is that it fails to consider alternative explanations for Kennedy's enhanced reputation. For instance, Kennedy has patented equipment related to decompression traction outside his relationship with Encore. Kennedy has also developed his own decompression technique, which has received substantial promotion from Mir-Com Products, LLC. (ECF No. 145 at 11–12). Dr. Proulx, therefore, has no way of justifying his view that Encore is the predominant reason why Kennedy is now regarded as an expert on decompression techniques.

### D. Clinical outcomes achieved from decompression systems purchased from a single manufacturer and those assembled from components made by different manufacturers

Dr. Proulx's fourth proffered opinion concerns the clinical outcomes of various decompression systems depending on whether the machines are assembled with components made by one, or more than one, manufacturer. (Hr'g Tr. 90:11-18). In Dr. Proulx's report, he bases his conclusion on his experience as a practicing chiropractor and on the fact that, "if chiropractor buys the components of a system individually rather than as a package, those components may not be compatible with one another." (ECF No. 145-1 at 4). This view is without sufficient scientific support.

As with Dr. Proulx's other opinions, this opinion is nothing more than conjecture. Dr. Proulx acknowledges that there is "no published literature" to evaluate his claim. (*Id.*).

7

Similarly, other factors show the unreliability of Dr. Proulx's opinion: the claim has not been subject to peer review, his method has no known or potential rate of error, and Dr. Proulx has not shown that his view is widely accepted in the chiropractic field. (*See* Hr'g Tr. 91:23, 91:2, 99:4-9). In other words, Encore has provided the Court with no reassurance that this opinion is reliable.

**E. When evaluating decompression systems for purchase, chiropractors are influenced by the fact that another practicing chiropractor is associated with a manufacturer of that system**

Dr. Proulx's fifth proffered opinion concerns the purchasing decisions of practicing chiropractors. The justification for this opinion is Dr. Proulx's personal experience as a chiropractor. (ECF No. 145-1). Dr. Proulx has no apparent expertise in market analysis (*see* Hr'g Tr. 151:4-5); his opinion is not based on empirical data or studies (*see id.* at 101:11); and Dr. Proulx acknowledges that he has never specifically addressed this issue with any practicing chiropractor (*see id.* at 100:21, 101:1). This opinion is again without any indicia of reliability because Dr. Proulx used little methodology beyond his own intuition.

**F. Kennedy endorses the Kennedy Decompression System by teaching Kennedy Technique Seminars using a table named after him**

Dr. Proulx further opines that, because Kennedy allows his name to be associated with the Kennedy Decompression Table, he "implies that this is the table that chiropractors should buy." (ECF No. 145-1 at 4). Encore has not demonstrated by a preponderance of the evidence that this conclusion is reliable. At the *Daubert*/Rule 702 hearing, Dr. Proulx provided no justification for this conclusion, and the opinion is not founded on market research, surveys, or any other type of reliable methodology. (*See* Hr'g Tr. 101–07).

In claiming that Dr. Proulx's opinions should be admissible, Encore simply argues that Dr. Proulx may rely on his specialized knowledge and experience in the chiropractic field. Encore, however, has failed to place the proper emphasis on the *methodology* that Dr. Proulx used in forming his opinions. Here, as with the other opinions, the testimony should be excluded because Dr. Proulx lacks good grounds for his conclusions.

### G.     The Kennedy Decompression Technique can only be performed on a Kennedy table

Dr. Proulx's seventh proffered opinion is that Kennedy is teaching techniques that can be performed only on a Kennedy table. This opinion likewise fails to satisfy the reliability requirement of Rule 702. Dr. Proulx admits that he has no personal familiarity with the Kennedy Decompression Technique (*see* Hr'g Tr. 153:15, 154:15-18), and Dr. Proulx has never used a Kennedy Decompression Table (*see id.* at 111:12-24). At the *Daubert*/Rule 702 hearing, Dr. Proulx stated that he has only viewed a Kennedy table at a display booth (*id.* at 111:17). Dr. Proulx further acknowledged that it is possible for the Kennedy techniques to be performed on other decompression tables, although some techniques may be more difficult to perform on certain tables. (*see id.* at 113:7-17). Thus, Dr. Proulx has not shown good grounds for his conclusion.

### H.     Chiropractors attend Kennedy Technique Seminars to avoid legal liability in the event of a malpractice claim

Dr. Proulx's final opinion concerns whether practicing chiropractors regard a certification in the Kennedy Decompression Technique as necessary to avoid legal liability. He bases his view both on personal practical experience and on a few conversations with others. According to Dr. Proulx, "[S]ome of Encore's dealers have

asked that we [Encore] put together a certification similar to the Kennedy certification so that our customers will feel more comfortable. These dealers have told me that the chiropractors believe the Kennedy certification is necessary." (ECF No. 145-1 at 5; *accord* Hr'g Tr. 117:1-16).

This opinion fails to satisfy the fit, qualification, or reliability requirements of Rule 702. Encore has not shown that this opinion relates to any pertinent issue in this case. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citations and internal quotations omitted). Additionally, Dr. Proulx does not possess "specialized knowledge" regarding medical malpractice claims. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (discussing the qualification requirement). Finally, Dr. Proulx lacks good grounds for his conclusion. The only "standard" guiding Dr. Proulx's conclusion are a few discussions with Encore dealers, who in turn relayed a few statements of practicing chiropractors. Thus, this opinion is not based on reliable methodology.

## VI.   CONCLUSION

For the foregoing reasons, Dr. Proulx's eight proffered opinions do not satisfy the requirements of Rule 702. The Court will therefore grant Defendants' motion to exclude the proposed expert testimony (ECF No. 128).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENCORE MEDICAL, L.P.,
    Plaintiff/Counterclaim
    Defendant,

    v.

JAY KENNEDY, D.C.,
    Defendant/Counterclaimant,

    v.

GEOFFREY MISCOE; MIR-COM
PRODUCTS, LLC; BRYANNE
ENTERPRISES, INC.; and MIG
RUNNER, LLC, *a/k/a "MRP,"*

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 3:12-58

JUDGE KIM R. GIBSON

## ORDER

NOW, this **30th** day of December 2013, this matter coming before the Court on

Defendants' motion to exclude the expert testimony of Dr. Christopher M. Proulx (ECF

No. 128), upon consideration of the parties' accompanying briefs (ECF Nos. 129, 138,

144, 145) and the evidence presented at the *Daubert*/Rule 702 hearing, and for the reasons

provided in the attached memorandum,

**IT IS HEREBY ORDERED** that the motion (ECF No. 128) is **GRANTED.**

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**